We'll hear argument next in Clemens v. Moody's Analytics, 18-1283. Is he here? Can you ask him to find out? Good morning, Your Honors. May it please the Court, my name is David Mayer, and I represent the Plaintiff Appellant Gregory Clemens in this case. In this case, Your Honors, the District Court impermissibly crossed the line, waded into fact-finding, decided multiple central factual issues in the defendant's favor, in the movement's favor, and granted summary judgment against the Plaintiff. Ignoring much of the evidence that supported the Plaintiff's case, either ignoring or discounting it, drawing every inference in favor of the defendant's rather than the Plaintiff. And this is a case, Your Honor, where the standard of proof on the FMLA claim, the central claim in the case, is a motivating factor standard and not a but-for causation case. So that's, I think, the most important thing to bear in mind. It's a motivating factor, and the only thing that you have is a suggestion that the reason that they looked at the investigation was the fact that your client was away. Is that the FLSA motivating a look at what he sent in, or just the fact that the person was not working for whatever reason causes you to look at the chits that he sent in? How is that the FLSA, rather than simply, if somebody doesn't work, we have to look at the amount of time that he says he worked? Why is that the FLSA? Well, Your Honor, first and foremost, there's direct evidence here from the decision-maker, his manager, David Little, that he reduced the contribution units and reduced the compensation, and then had to justify that in some manner, and four days later made a complaint to HR about falsification. But when he met with Mr. Clemens, when the manager met with Mr. Clemens on March 14th and said he was taking away 20 contribution units, he said directly that this was because of his medical leave. He said, and I'm quoting here from the Joint Appendix 684 to 688, Mr. Little told me, first of all, he saw no way that I could have achieved my target, given that I was on medical leave. He told me that his managers would not sign off on the commission that the system said because I was on medical leave. But is he saying medical leave or is he saying leave? Is he saying, I don't see how you can claim that you worked this much when, for whatever good reason, you were away, or is he saying it's because it was a medical leave that we look at it? And that, for me, is a question of whether the FMLSA is involved in it or not. I mean, if somebody says you have put in chits that say that you worked a certain amount of time when, for whatever reason, you weren't there, how does that imply anything about the FMLSA? Do you understand what I'm saying? I do, Your Honor. First of all, the story that the manager, David Little, told to Mr. Clemens in that meeting was completely different than the story that he told four days later when he filed an HR complaint. So he gave two different stories. The story he gave to Mr. Clemens was not focused on any particular claim of units. He didn't say that on the SAS project you claimed too many units or on the CECL project you claimed too many units. He didn't say, which, by the way, he testified in his deposition was his normal practice to do. He didn't say, I have a problem with the units you claimed. I want to sit down and understand, why did you claim this many units for this task? He didn't say any of that to Mr. Clemens on March 14th. He said to Mr. Clemens, the overall compensation here is too high for somebody who's been on medical leave. That's what I think. That's what my managers clearly think, and they will not sign off on that. And for that reason, I'm reducing your compensation, and you should just be happy that you have your health back. Is that on the record exactly? That, Your Honor, is at the Joint Appendix 684 through 688. He recounts over those pages exactly what happened or what was said to him by Mr. Little at that March 14th meeting. Now, in this case, Your Honor, it's important to understand how the incentive compensation is calculated. It's calculated by a table that says, when you complete this task, you get this many units. Mr. Clemens claimed to have completed certain tasks while he was on the ten months that he was working. He didn't claim any tasks for the two months that he was on medical leave. That's undisputed. So he claimed tasks or units for specific tasks, and he listed the tasks, and he listed the units, and he listed the dates. None of those dates were while he was on medical leave, and it came to a certain number of units. That number of units, by the way, is less than if you multiply that out to 12 months, it's actually less on a monthly basis than the rest of the team who worked the full 12 months. So on a prorated basis, it's not like he's claiming way more units than anybody else. He's actually claiming less on a prorated monthly basis. So if the concern by David Little had been with some of those line item entries, which is what he later said when he, four days later, accused Mr. Clemens internally of having, and he used the word, falsified these entries, that's a very different thing than saying to Mr. Clemens, I think that your units overall are too high here. So he changes his story, number one. By the way, he also, David Little also admitted to the investigators that he had said to Mr. Clemens that his units were too high for somebody out on medical leave. That's in the notes of the investigators. If we now turn to the termination, the termination was David Little. It's undisputed. David Little, the manager, made the termination decision. Now, Little says, well, I decided to terminate him because of the results of the investigators, which then the review committee adopted without doing any further investigation. And we show point by point by point by point, Your Honors, that Mr. Little fed false information to the investigators. He said you can't claim more than one set of units if it takes you multiple weeks. And the plan itself says there are categories where you're given three units for the task period, and then there are other categories where you're given five units per week of work. It says for up to one week of work. And the language is totally different. And the person, Michael Musacchio, who actually administered that plan, it's right in Mr. Clemens' sworn testimony that he was told by the person who administered the plan, he's entitled to take more, he can claim multiple sets for multiple. You are saying that the person who fired him knew that these were false. That's your allegation because if a person who fired him believed that they were true, even if they were false, you don't have a claim. I understand, Your Honor. In Mr. Clemens' affidavit, he said categorically, David Little told me that I could claim, confirmed that I could claim multiple sets of units for multiple weeks of work. So that's right in his affidavit. There's sworn testimony. David Little doesn't actually contradict that. He says he didn't actually remember addressing this with Mr. Clemens. But then when you go through each of these projects, David Little came in and he said he's — Who did the firing? I'm sorry, Your Honor? Who did the firing? David — it's undisputed. It's conceded in their brief that the decision was made by David Little. Little claims that he did it based on the results of the investigation that was adopted by the IRB committee. But the investigation was almost exclusively, not quite exclusively, but primarily driven by the information given by Little himself to justify the units that he'd taken away. And we go through point by point by point, Your Honor, in the brief. What you're — Showing that it was false. Let me try to get this straight. You say that since you say that what Little said to the investigators was false, then if the investigators come back with a report and then Little acts on that report, we cannot say that Little was simply going on the report, which he might have believed because he couldn't believe it because of what he had told the investigators in the first place? Correct. He engineered the conclusion to the report that he wanted based by lie after lie after lie after lie, one of which — or multiple of which he admits in his deposition were not true. He claimed that Mr. Clemens — he claimed to the investigators, it's right there in the report, that Little claimed to the investigators that Mr. Clemens copied the battle cards from Mr. Gill at his deposition. I asked him, do you know whether or not he copied these from Mr. Gill? And Mr. Little said, no, I don't know. I have no idea. So there — and there's point after point that I could go through, that we go through in the main brief, and then I summarize in the reply brief. Point by point by point on all of these central issues that result in those 20 contribution units that he took away, where he took them away, he said to Mr. Clemens, I'm taking these away because you can't earn this much for somebody who's been on medical leave. He's very clear in the testimony and the pages that I cited. What's odd about this is that Mr. Clemens in his own deposition says, I don't believe I was discriminated against because I asked for a leave of absence. Your Honor, that was taken — not only taken out of context, he explained that answer literally one question later, in which he made it clear that he thought he was being asked what was his state of mind at the time when Little came to him and took these units away, not later on when he found out that Little had accused him of falsifying the units. So he clarifies that, Your Honor, very, very clearly. And I block quote from the question and answers in the reply brief. I can get you the page references. It's on page eight of the reply brief. So when you don't stop at that first question, you realize what he thought he was saying is what was my state of mind at the time, that March 14th meeting when Mr. Little said, I'm taking this away from you. He didn't know at that time that Mr. Little, four days later, was going to launch an investigation accusing him of falsifying units because Little didn't say a single thing about that to Mr. Clemens. He didn't say, listen, I have real concerns about your units here. I want to go through line by line. Why do you claim this many units for this task? That was Little's normal practice if he thought he had concerns about units that were claimed. He did none of that. It's undisputed. He said to the investigators, he admitted, I didn't ask Mr. Clemens about a single one of these entries. And that shows a certain state of mind, Your Honors. You've reserved two minutes for rebuttal. We'll hear from your adversary, and then we'll hear again from you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Ken Turnbull, representing Defendant Appellee Moody's Analytics. I submit to the Court that the District Court faithfully adhered to the well-known, long-established principles for evaluating a discrimination summary judgment case. Mr. Clemens testifies, as your adversary pointed out, that he had a conversation with Mr. Little where the fact that he took medical leave was at least a factor in determining or rejecting the unit determination. What are we to make? Well, first, is that accurate in your view? And if it is, what are we to make of that testimony? So Mr. Clemens' contribution units, which measure someone's activities that are intended to help generate business and sales, were evaluated by Mr. Little and by his co-manager or assistant manager, Anna Crane, independently. They do it every year as part of their evaluation of one's claimed contribution units to make sure that those are accurate. Mr. Little, to Judge Calabresi's question, Mr. Little testified at his deposition that he knew how long Mr. Clemens had been out, he knew what his activities were, and when he saw the number of claimed contribution units, he was skeptical. It was not FMLA specific. It just had to do with the fact that he was out of the office. He used the words medical leave, but you're saying that the fact that he used the words medical leave really made no difference. He was just saying you were out for this period of time, and these units look too high to me for somebody who was out. Exactly right, Your Honor, and the testimony is clear. This is Mr. Little on this exact point in his deposition. My surprise was at the total number of contribution units claimed given the amount of time out of the office and given what I knew about the projects Mr. Clemens was working on. That is what prompted my review. Anna Crane independently said I looked at the claimed contribution units, some of which he claimed work on projects that I was leading, and I knew for a fact that the contribution units that he was claiming were not legitimate because I was supervising that project. I want to clarify one other point. Mr. Clemens' description of his meeting with Mr. Little is a little different than what we heard earlier. Mr. Clemens said that during this meeting, this March meeting, that Mr. Little, and here's a quote, and he kept saying, I remember specifically, he kept saying over and over, there's no way I can approve 160 hours for a one-hour presentation. Or there's no way that I could have achieved my target given that I was on medical leave. Correct. But, again, that is not FMLA-specific. The same conclusion would have been reached had he just taken a leave of absence. The same conclusion would have been reached had he been on a short-term disability leave. I think the other important point I'd like to make. That's not saying I'm rejecting because you are on medical leave. There's no way you could have done this while you were on medical leave. Correct. The number of contribution units you're claiming, which are a stretch goal, made me look closer. He didn't just make a decision because it's a stretch. He actually looked close at them. The district court said that appellant hadn't shown, hadn't proven that the explanation was pretextual. That's incorrect. It isn't whether he has proven that that's pretextual. It's whether he has shown enough so that a jury could find that. So that's a clear error on what the district court said. But is that an error that matters? Your Honor, appellant has said that the district court improperly shifted the burdens. And I think the district court clearly understood and articulated that plaintiff had the burden of demonstrating pretext. Plaintiff has a burden of bringing in enough evidence so that a jury could find pretext. The district court said that plaintiff had the burden of establishing pretext. Now, that's an error. I'm not sure it matters in this context, but there's a difference of having enough evidence to demonstrate something, to prove something, and to have enough evidence to get to a jury on. Understood, Your Honor. And I take your point that if it was an inartful use of a particular word, your point is? This is what it says. Plaintiff fails to prove by a preponderance of the evidence that Little repeatedly lied to investigators. That's not the proper standard. The plaintiff doesn't have to prove anything by a preponderance of the evidence at this point. Now, Judge Cardi follows it up with basically stating the correct standard, which is that the evidence would not allow a reasonable jury to find for him. But there's some sloppy language there that you seem to work very hard to defend in your brief, and I don't quite understand why. There's no way the plaintiff has to prove anything by a preponderance of the evidence at this stage. That ain't a question of artfulness or not. It's just plain error. I would submit to the Court that applying the standard as was articulated, properly articulated by the judge in the follow-on sentence, the Court looked at the record as a whole. It didn't look at one statement in piecemeal. But we can affirm on any ground if it is there, so that we should ignore the fact that the Court actually stated a wrong ground at one point. Your Honor, yes. I'm saying that if the statement was wrong, the courts can still review the evidence. And just as the district court did here, I believe the evidence was overwhelming. Against this one comment, we have Mr. Little determining some were false. I have one other problem, and that is when it comes to the state law claims, the Court cites any number of opinions by federal courts. There's actually criticism for the citing of a state court case, but I see nothing that tells me what the state law is on the questions of whether this was a breach of contract and anything else, so that I just don't see where the treatment of the state law claims was adequately here. Isn't the appropriate, assuming we agree with you on the federal claims, isn't the appropriate thing simply to dismiss the federal claims without prejudice and let those be tried out in state court? You know, we can't certify because we shouldn't anyway in that case. The state law claims, Your Honor, that were alleged here were a wage claim, a failure to pay wages, and the state law is clear that where compensation is based not only on your individual contribution but also team. It may be clear, but I don't see any citation to state cases. Your Honor, the briefing identified the cases that establish that under New York state wage law. You're relying on True Love. True Love is the principle case that, and it's progeny, but True Love is the principle case that says where one's potential incentive compensation is based not only on your individual contributions, but also the contributions of others. Then it is not wages that can be sued for under the New York state labor law, and that is exactly the plan here. It relied on both Mr. Clemens and his team's contributions. But there was no analysis by Judge Crotty about whether or not the court should exercise supplemental jurisdiction. There was not. Judge Crotty determined the issue as part of the supplemental jurisdiction that he had. Why is this not an enforceable contract plan? The principle reason is the plan itself by its terms could have been terminated at will at any time by the company. And so where the plan is terminable at will, it does not rise to the level of an enforceable contract. And those facts are undisputed. What's the best case for that? I don't have that handy, Your Honor, but it is in the briefs. And then, if I may, on what the court had before it, it had Mr. Little, Miss Crane, an investigation undertaken by seasoned compliance professionals who interviewed at least six witnesses. They reviewed voluminous documentary evidence. They issued a 14-page report which was What about the claim that the FMLSA was violated itself in terms of whether there was double counting or double discounting or not? No, that's a very odd situation because you focus primarily on what was done by the group and therefore say that discounting was appropriate. They focus primarily on what he did and said that was discounted. And so you're now double discounting. And then you have this odd 50% which suggests that, in fact, it was a little bit of both. And so there was not full double discounting but some discounting. And that, from a purely mathematical point of view, is probably not the most accurate one. On the other hand, it is kind of taking into account that it is both. Now, is that enough? Have they argued specifically that it was this 50% that was incorrect? I'm left a little puzzled by all that. Understood, Your Honor. Let me see if I can help. I think that that question of proration, does Moody's have the right to prorate this compensation based on one's absence? I think that's answered clearly and straightforwardly by the FMLA regulations itself because those regulations state unequivocally that if a bonus or other payment is based on the achievement of a specified goal, such as hours of work or production, then payment may be denied or the employers are free to prorate such bonuses or awards in a nondiscriminatory manner. And what that means is you can't treat FMLA leave different than other types of leave. And the record is clear that no matter what type of leave one took, the same proration would apply. Well, I'll ask them whether that there is any evidence that this same proration was what would have been applied in a different context. Thank you. Thank you. Thank you. Your Honors, I want to turn first of all to your question to Mr. Turnbull about whether or not the district court's application of the wrong standard matters here. And I think it absolutely does. It was central to this case. And what the district court said was that we failed to prove, as we might to a jury, that Mr. Little had lied to the investigators in order to orchestrate the result he wanted of that investigation. It's absolutely central to this case, Your Honors. If Mr. Little lied and repeatedly lied on issue after issue after issue in order to support his claims of falsified units, that, Your Honor, is itself strong evidence that he's doing that to cover up an improper motive. And we know what that improper motive was because he came right out and said it multiple times in the March 14th meeting. You don't even have the burden to show that he lied. So ultimately your burden is to show discriminatory intent, right? Yes, Your Honor. Or retaliatory intent, regardless of what someone says after the fact to cover it up. Is that right? I mean, we talk about pretext, but that is the fundamental requirement that a plaintiff needs to show. That is correct, Your Honor. And the issue of Mr. Little lying is one of the circumstantial. It is not enough in order to show pretext in these cases to show that something was incorrect and the person knew it. It can be an incorrect third way which doesn't show the bad motive. That is, we have any number. It goes back to our embankment in Vassar that you have to have something that indicates the pretext with respect to the FMLA. FMLA, Your Honor. And that's exactly what we do here. Even though it's not our burden at this stage, we show that four days after he tells Mr. Clemens, I've got a problem with paying you this much when you were on medical leave. And if you show something of that sort, then all you need to do is show evidence of it sufficient for a jury and not what the district court said that you have to prove it. Yes, Your Honor. But you have to show something of that sort. And I would submit that we did. We showed where he said one thing to the investigators, and at the deposition, he admitted that it was not true and he had no basis for saying it. So that's all in the brief. You wanted us to page 684 of the record and your client's statement that in his conversation with Mr. Little, Mr. Little made it clear that it was because he had taken medical leave. When, in fact, if you look at it more carefully, he doesn't say it's because. It's not because you took FMLA leave. It cannot be the case that you are entitled to these contribution units given your leave. Aren't those two very different things? Well, I think in this case, Your Honor, on page 12 of our main brief, we show that this is not a case where if you look at Mr. Clements, he's claimed as many units as somebody who worked for 12 months and he only worked 10. He claimed proportionately fewer units than the rest of the group who worked the full 12 months. So this is not a case where he's coming along and saying, wait a second, how could you get to 240 units when you were out for two months? Because his units are proportionately lower, actually much lower, than the others in his group. So that potential explanation, and by the way, Your Honor, it's only a potential explanation for what Mr. Little could have meant when he was referring to having too many units for being out on medical leave. Could you address the questions of state law and whether this was a contract at will which couldn't be breached and whether these were clearly the kind of payments which would not be covered under the state law, as opposing counsel has said? Yes, Your Honor. And on page 26 of our reply brief, we talk about what I think is the central case, and it's a state case, the case of Freedman v. Aronson Office Furnishings. That's a 2015 First Department case in which the First Department says the operative issue for determining whether the labor law applies is whether the plan in question creates, quote, a direct relationship between plaintiff's own performance and the compensation to which she's entitled. That plainly- But that's a non-discretionary bonus case. Okay? This was a totally discretionary bonus. It turned on things that were outside of your client's control, right? It was his productivity plus the productivity of his team. It was not a discretionary bonus, Your Honor. It was a formulaic bonus that applied two elements. One was what his team generated in revenues- You're saying it was a mandatory bonus. It's a non-discretionary bonus. And so the language of the plan that says that this bonus can be changed or amended or altered or eliminated for any reason or no reason doesn't matter, that this was a non-discretionary bonus just like Freedman. Correct, Your Honor, because I would draw a distinction, Your Honor- Go back and read Freedman. I would draw a distinction, Your Honor, between a plan that says the payment is discretionary, the allocation of the payment is discretionary, versus the plan here which says it can be amended or changed during the plan year at the discretion of the company. Well, in this case, it wasn't. It's undisputed. We get to the end of the plan year. They haven't amended, terminated, or changed the plan. It bakes in. It bakes in now a contractual right to be paid under a formula, and that formula is half dependent on Mr. Clement's own productivity. That's what meets the Freedman case. How much of an analysis of all of this state law was made by the district court? Very little, Your Honor, and I don't think, as Your Honor said, my recollection is that the district court did not discuss any state cases. Well, the district court cited federal cases that referred to state cases, right? It did, but for the reasons I just said, I believe that it's an incorrect application of the law. The only case I believe that the defendants cite for the discretionary, for the non-contractual enforceability, which I think Your Honors had asked earlier, is this court's decision in Kravitz versus International Business Machine, which is an unpublished decision of this court, but in that case, Your Honors, what this court hung its hat on there in saying there's no contractual right is that the plan explicitly stated, quote, it does not constitute an express or implied contract or promise by IBM. So the plan said this is not a contract. This is not a promise. Let's assume that this is an enforceable contract, so let's assume that we agree with you. Other than what you've told us about this conversation, how was Mr. Little's action irrational or in bad faith? Or is that what you're relying on? I think it is irrational and in bad faith for all the reasons that we show that he lied to support these allegations, but I also don't think we have to show that. If it's a contractual right, then the question is did Mr. Clemens perform the work or didn't he perform the work? It's not. It doesn't require a state of mind by Mr. Little, and as Your Honors have pointed out, I think that if for some reason the federal claims were all dismissed, then we should be given leave to go to state court with the state claims in the case. You didn't ask for that, did you? No, Your Honor, but I think it's certainly within the court's discretion. If those state law claims were improperly dismissed and the federal ones were, then I guess we may now lack federal jurisdiction. Well, it's really a question of what the presumption should be in situations where all the federal claims are out and the only reason the court had jurisdiction over the state ones was this jurisdiction because of federal claims. Whether in those cases, if there's any issues of difficulty, those cases should be allowed to be brought or not in state court or whether we should decide where we start in that situation. Okay. Thank you. Thank you very much. Thank you, Your Honors.